956 F.2d 1167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ron LAPIN, Petitioner-Appellant,
v.
COMMISSIONER, INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 91-70083.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1992.*
Decided March 12, 1992.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ron Lapin ("Taxpayer") appeals from the Tax Court's ruling in favor of the Internal Revenue Service ("IRS") on his petition for a redetermination of disallowed deductions and assessed deficiencies, arguing, inter alia, that the Tax Court erred by disallowing his deduction for a claimed theft or abandonment loss for 1983, sustaining the IRS' additions to tax for 1982, and denying Taxpayer's motions to continue and for reconsideration. We affirm.
 
 I. THEFT LOSS DEDUCTION
 
 3
 A taxpayer is entitled to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a). In the case of theft, the loss is "treated as [having been] sustained during the taxable year in which the taxpayer discovers such loss." 26 U.S.C. § 165(e). A qualification to this rule is that
 
 
 4
 [I]f in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of Section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.
 
 
 5
 Treas.Reg. § 1.165-1(d)(3). Most importantly--and contrary to Taxpayer's vigorous assertion--it is the taxpayer who bears the burden of proving that a deductible loss was sustained within the meaning of 26 U.S.C. § 165(e) and Treas.Reg. § 1.165-1(d)(3). Citron v. C.I.R., 97 T.C. 200, 207 (1991) (citing Clapp v. C.I.R., 321 F.2d 12, 14 (9th Cir.1963)).
 
 
 6
 We reject Taxpayer's theft loss deduction argument for several reasons. First, the plausibility of Taxpayer's contention that he discovered his loss in 1983 is strained by his subsequent act of filing a return claiming a tax loss of $241,561 on a $60,000 investment.[1] Second, and even if it could be said that Taxpayer "discovered" his loss in 1983, he would still have to have shown that he had no reasonable prospect of later recovering that loss, either from Western Reserve or a third party. Cf. McCullough v. C.I.R., 60 T.C.M. (CCH) 1514, 1516 (1990) ("A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise."). This he did not do.[2] Third and finally, Taxpayer's act of suing Bob Strathern is inconsistent with the notion that Taxpayer could not have sought reimbursement from a third party. Cf. Dawn v. C.I.R., 675 F.2d 1077, 1078 (9th Cir.1982) ("The fact that taxpayers filed a lawsuit to recover the deducted loss gives rise to an inference that they had such a claim.").
 
 
 7
 In light of the above, there was no error in the Tax Court's finding that Taxpayer failed to produce sufficient evidence to support his claim for a theft loss deduction in 1983. See Norgaard v. C.I.R., 939 F.2d 874, 877 (9th Cir.1991).
 
 II. Abandonment Loss Deduction
 
 8
 An abandonment loss is deductible if evidenced by a closed and completed transaction that is fixed by an identifiable event occurring in the year of the claimed loss, but only if the taxpayer shows both an intention to abandon the asset in question and an affirmative act of abandonment. A.J. Indus., Inc. v. United States, 503 F.2d 660, 670-71 (9th Cir.1974). The evidence showed, inter alia, that Taxpayer failed to notify anyone in 1983 of his purported intent to abandon his claim; he filed a return in 1984 claiming a $241,561 deduction for his Western Reserve limited partnership loss; and he attached a statement to the last page of his 1983 trust return, indicating that he did not consider the issue to be a closed one.[3]
 
 
 9
 Because there was ample evidence showing an intent on Taxpayer's part inconsistent with his later claim of abandonment, the Tax Court did not err by ruling that he was not entitled to an abandonment loss deduction.
 
 III. Addition to Tax
 
 10
 With respect to returns due on or before December 31, 1989, the IRS may impose an addition to tax equal to 25% of the amount of any underpayment attributable to a substantial understatement of income tax for a given year. 26 U.S.C. § 6661(a) (since repealed). An understatement is deemed substantial if it exceeds $5,000 or 10% of the income tax due for the year in question. 26 U.S.C. § 6661(b)(1)(A)(i), (ii) (same). However, the IRS may, in its discretion, waive the penalty "on a showing by the taxpayer that there was reasonable cause for the understatement ... and that the taxpayer acted in good faith." 26 U.S.C. § 6661(c) (same).[4]
 
 
 11
 Here, Taxpayer argues that the IRS could not impose any addition to tax because it was Taxpayer who first disclosed the Western Reserve matter to the government, and that the IRS should not have imposed the addition to tax because Taxpayer reasonably relied on professional advice.[5] Neither argument has any merit.
 
 
 12
 Although we find no error in the Tax Court's holding that the facts do not support Taxpayer's contention that he had brought the whole matter to the attention of the IRS, we note also that the so-called "disclosure rule" of 26 U.S.C. § 6661(b)(2)(B)(ii) does not apply to a tax shelter such as Western Reserve. See 26 U.S.C. § 6661(b)(2)(C); Ferrell v. C.I.R., 90 T.C. 1154, 1198 (1988). The facts recited above also show that Taxpayer's situation is clearly not that of an unsophisticated investor entitled to a waiver of the penalty. Cf. Vorsheck v. C.I.R., 933 F.2d 757, 759 (9th Cir.), cert. denied, 112 S.Ct. 591 (1991). Accordingly, we find no error with the Tax Court's ruling on this issue, either.
 
 
 13
 IV. Motions to Continue and for Reconsideration
 
 A. Motion to Continue
 
 14
 We look to four factors in deciding whether a trial court abused its discretion in denying a continuance: (1) the movant's diligence in readying his case for trial; (2) the likelihood that the grant of a continuance would have satisfied the need therefor; (3) inconvenience to court, parties, and witnesses; and (4) the extent of harm to the movant resulting from the denial of his motion. United States v. 2.61 Acres of Land, 791 F.2d 666, 671 (9th Cir.1986) (as amended). Here, Taxpayer conceded in his motion for a continuance that the case had been at issue since June 28, 1989 (i.e., nearly eight months prior to the trial date); his counsel neither renewed the motion at trial, nor argued that he was unprepared for trial; and Taxpayer has made no showing of any actual prejudice resulting from the "unusually swift setting of trial." See United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir.), as amended, 764 F.2d 675 (1985). The Tax Court did not err in denying the motion.
 
 B. Motion to Reconsider
 
 15
 Taxpayer's final argument boils down to a difference of opinion over the correct reading of Abraham Krantz's testimony regarding his conversations with Taxpayer and/or Roger Strumm. We find no error in the Tax Court's treatment of this question, nor any abuse of discretion in its ruling, either.
 
 
 16
 We find no merit in any of Taxpayer's remaining arguments. Accordingly, the decision of the Tax Court is
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Thus, if Western Reserve was a sham, then so were the losses it reported. Unless Taxpayer is now admitting that he knowingly filed a false 1982 return, the only other inference which can be drawn from the evidence is that Taxpayer was not convinced at the end of 1983 that his Western Reserve investment was a sham
 
 
 [2]
 Taxpayer offered little to support his contentions that it would have been prohibitively expensive to have sued the Western Reserve principals, or that Western Reserve lacked the assets (or had too many liabilities) to pay a claim for reimbursement
 
 
 [3]
 That statement reads, in relevant part, "At such time in the future that the Audit of the partnership by the IRS is completed and the information can be relied upon, the Taxpayer will file an Amended Return."
 
 
 [4]
 Somewhat unhelpfully, the IRS has declared that "Reliance on ... professional advice, or other facts ... would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Treas.Reg. § 1.6661-6(b)
 
 
 [5]
 Taxpayer also contends that the retroactive application of the 150% increase (i.e., from 10% to 25%) in the addition to tax liability of 26 U.S.C. § 6661 constitutes a violation of due process. We have previously discussed and rejected this argument. See Licari v. C.I.R., 946 F.2d 690, 693-95 (9th Cir.1991)